IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| **JOHN DOE, &** | ) | CASE NO.: |
| **JACK ROE,** | ) | |
| | ) | |
| Plaintiffs[1], | ) | |
| | ) | |
| -versus- | ) | **COMPLAINT** |
| | ) | |
| | ) | |
| **WOFFORD COLLEGE** | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

I.  **NATURE OF ACTION**

1.  This is an action for compensatory damages and other appropriate relief against the Defendant for discrimination on the basis of sex and retaliation in violation of Title IX of the Education Amendments of 1972, 20 USC § 1681.

II. **PARTIES**

2.  Plaintiff John Doe resides in Beaufort, South Carolina.

3.  Plaintiff Jack Roe resides in Beaufort, South Carolina.

4.  Defendant Wofford College (Woco) is a private college located in Spartanburg, South Carolina.

III. **JURISDICTION AND VENUE**

5.  This Court has jurisdiction over the Plaintiffs' claims pursuant to 28 USC § 1331.

6.  Venue is proper within this District pursuant to 28 USC §§ 1391(b)(1) and (2) because the Defendant is located in South Carolina and the conduct underlying the Plaintiffs' claims occurred in South Carolina.

---

[1]The Plaintiffs will move the Court for permission to proceed pseudonymously in this action but the identities of the Plaintiff have been provided to the parties in a cover letter from undersigned counsel which was served with this Summons and Complaint.  Use of pseudonyms is sought to mitigate damages.

## IV. FACTUAL AVERMENTS

7. In August, 2014, Plaintiffs enrolled as full time resident students seeking bachelor degrees from Defendant Woco.

8. Plaintiffs are both males.

9. In March, 2015, Plaintiffs were subjected to sexual harassment, hazing, and bullying by others including students enrolled at Defendant Woco

10. Plaintiffs informed Defendant's agents as early as March, 2015 that they were being sexually harassed, hazed and bullied by others on campus.

11. Specifically, Plaintiffs complained that they were being falsely accused of being "rapists" with such allegations originating from females including PG.

12. Defendant took no action, began no investigation, and destroyed exculpatory video of March 20-21, 2015 from Greene Dorm.

13. Plaintiffs again complained to Defendant and its agents in May, 2015.

14. Defendant took no action and began no investigation.

15. Plaintiff Doe sought medical treatment for injuries including physical and mental suffering and suicidal thoughts.

16. Plaintiffs Doe and Roe were subjected to continuing harassment by other students after this complaint.

17. This sexual harassment included being falsely accused of being rapists.

18. Defendant's agents admitted under oath during depositions that such false allegations would be considered sexual harassment and this type of conduct was actionable under Defendant's Title IX policy.

19. In March, 2016, Defendant imposed no-contact restrictions against both Plaintiffs and PG following a complaint made to Defendant by PG.

20. PG is a female and was a student at Woco at all times relevant to this Complaint.

21. The nature of this complaint is unknown and no information has ever been provided to the Plaintiffs.

22. This no-contact restriction was put in place without an investigation.

23. This no-contact restriction purportedly worked "both ways."

24. This restriction prevented, among other things, the restricted party from involvement in extracurricular activities in which the protected party was engaged.

25. Plaintiffs were members of Pi Kappa Alpha (PKA) fraternity.

26. PG was not a member of PKA.

27. On April 29, 2016, PG defied the no-contact order and attended the only on-campus fraternity function of the year at the PKA house.

28. Out of fear and anxiety, Plaintiff Doe left the function when PG made her presence known.

29. PG then danced with her body against Plaintiff Roe.

30. Plaintiff Roe then left out of fear and anxiety.

31. Plaintiffs complained about her presence at the function.

32. Plaintiffs sought video evidence of PG's violation of the no contact agreement.

33. Plaintiffs' undersigned counsel submitted a request to Wofford College Public Safety Director (Director) in writing in a manner which the Director indicated was sufficient to retrieve the evidence.

34. No evidence was provided.

35. No investigation was conducted

36. The April 29, 2016 video was destroyed.

37. This destruction occurred under color of law.

38. This destruction occurred in bad faith.

39. The Director is a state actor because he possesses general arrest powers under South Carolina law.

40. The Director was a policy maker for Defendant Woco.

41. The Director was acting as an agent of Defendant Woco at the time he was acting as a state actor.

42. His actions as both a state actor and agent of Defendant Woco impose upon Defendant Woco the responsibility to comply with the Due Process obligations of the United States Constitution.

43. Following her violation of the no-contact restriction, PG filed a claim against Plaintiffs in May, 2016.

44. She alleged the Plaintiffs tricked her into engaging in sexual conduct, otherwise consensual and while she had capacity to consent, with the wrong person in March, 2015.

45. PG also alleged that Plaintiff Roe engaged in both consensual and non-consensual sexual conduct on October 23, and 24, 2015.

46. In May, 2016, Defendant Woco opened a Title IX complaint against Doe and Roe.

47. On May 23, 2016, counsel for Plaintiffs then complained to the US Attorney's office about the possible civil rights violations stemming from the apparent gender bias of Defendant Woco.

48. On May 25, 2016, the Title IX Coordinator (Coordinator) and Deputy Coordinator (Deputy Coordinator) employed as policy making agents of Defendant then fabricated a different allegation that Plaintiffs engaged in sexual conduct with PG in March, 2015 while she was incapacitated and did not have the capacity to consent to sexual contact with either of them.

49. Defendant Woco's Deputy Coordinator told the Plaintiffs support person that it was the Defendant's policy to hold the man at fault when two intoxicated persons of the opposite gender engage in sexual relations.

50. On June 29, 2016, Coordinator met with Plaintiffs under the auspices of explaining their Title IX rights.

51. Coordinator is a licensed attorney.

52. Coordinator then used this June meeting to discuss the issue raised by Plaintiffs' counsel's letter to the US Attorney's office.

53. On July 14, 2016, Coordinator indicated in writing that she would delegate her duties to another administrator employed by Defendant Woco to investigate the repeated complaints of Plaintiffs as an "alleged bias incident."

54. Defendant never conducted this gender bias investigation.

55. During Defendant's investigation into the allegations against Plaintiffs involving

PG, Defendant learned of evidence suggesting that Plaintiff Doe might have been the victim of a sexual assault committed by PG against him.

56. Defendant never opened an investigation against PG for sexual assault of Doe despite this evidence.

57. Defendant never made PG the respondent or Doe the complainant.

58. In a September 19, 2016 letter, Plaintiffs learned of Defendant's determination that the allegations concerning March 20-21, 2015 made by PG against Plaintiffs were unfounded.

59. The allegations were so weak that they were dismissed without a hearing or a complete investigation being conducted.

60. Defendant later indicated that the allegation against Roe concerning conduct occurring on October 23, 2015 was based upon mistaken information and that there "was no allegation as of this date."

61. Defendant later indicated that "there is no sexual misconduct charge related to the statement that you (Roe) tried to have sex with (PG) when you both awoke" following receipt of electronic proof and other alibi information concerning that morning provided by Roe.

62. In the September 19, 2016 letter, Defendant affirmed that the "no contact" arrangements remained intact.

63. However, in September, 2016, Defendant continued to allow PG to violate the "no contact" order and attend PKA functions.

64. Defendant specifically repudiated efforts by Roe and Doe to have PG excluded from these functions.

65. On September 24, 2016, PG again violated the "no contact" order by taunting the Plaintiffs, their families and friends at the PKA house on Defendant's campus.

66. Defendant failed to enforce the order.

67. Instead, the Plaintiffs, their families and friends left the parents' weekend function.

68. Defendant destroyed the video evidence of this September, 2016 incident.

69. In fact, no further investigation was conducted and no official complaint was ever opened.

70. On October 28, 2016, PG physically assaulted and battered Roe at a Halloween party at the PKA house on Defendant's campus.

71. Roe reported this physical assault at the hands of PG and the violation of the "no contact" provision.

72. Roe requested the video be preserved.

73. Roe was allowed to view the video of the assault once.

74. Wofford failed to open an investigation into the assault and battery by PG despite its possession of corroborating video proof.

75. On November 29, 2016, Doe and Roe's attorney requested a copy of this video from Defendant's attorney.

76. Instead of opening an investigation, Defendant condoned and hid PG's misrepresentation about her conduct in relation to the Halloween party assault.

77. Then, Defendant and its then Director of Public Safety destroyed the Halloween assault video.

78. This destruction marked at least four times that Defendant destroyed evidence favorable to Doe or Roe or detrimental to the Defendant.

79. Meanwhile, due to the inaction of Defendant Woco, students and others continued to suffer from the damage caused by Defendant's inactions.

80. According to the testimony of two students, one from the Plaintiffs' hometown of Beaufort and one who is a PKA member, this republication continued to the point that hundreds of students at the school heard the false allegations that the Plaintiffs were rapists.

81. None of the students or PKA members heard of the Plaintiffs' complaints against others.

82. None heard that the Plaintiffs were cleared of wrongdoing.

83. The Plaintiffs withdrew from enrollment at Defendant Woco in December, 2016 because of this deliberate indifference.

84. Defendant refused a demand for the return of moneys held in trust for the Plaintiffs.

85. These funds originated as federal loan money borrowed by the Plaintiffs and held

in trust by Defendant.

86. More than $6,000 was finally returned to the Plaintiffs in December, 2018.

87. Defendant has refused to honor legal process requesting a full accounting of the federal funds received by the school on behalf of the Plaintiffs.

88. To further retaliate, Defendant excluded the Plaintiffs from normal relationships extended to other alumni members including invitations to functions.

89. Defendant Woco never opened any investigation listing either Plaintiff as a complainant and any other student as a respondent.

90. Defendant Woco was deliberately indifferent to Plaintiffs' complaints about being sexually harassed and called rapists.

91. Defendant Woco was deliberately indifferent to PG's violation of the no-contact order.

92. Defendant Woco was deliberately indifferent to Plaintiffs' rights to be free from the improper use of its Title IX policy to charge male students without any cause but fail to investigate complaints against female students.

93. Defendant Woco's non-feasance and malfeasance in the enforcement of Title IX exhibits a gender bias against males and in favor of females who complain about other students.

94. Defendant's Deputy Coordinator stated this gender bias when he explained by Doe was being investigated for having sexual intercourse with PG when she was intoxicated even though Defendant had evidence suggesting PG committed a sexual assault against Doe while he was intoxicated.

95. Defendant's Deputy Coordinator's statement turned out to be true because despite being similarly situated, Defendant only investigated Plaintiffs and never anyone against whom Plaintiffs complained over the years.

96. Defendant Woco further misled Plaintiffs about the gender bias investigation because of the Plaintiffs' gender.

97. Defendant misled Plaintiffs in order to cover up gender bias and discourage Plaintiffs from complaining to the US Department of Education as suggested to Plaintiffs by the US Attorney's office.

98. In contrast, Woco opened frivolous investigations against Plaintiffs. These allegations were determined to be unfounded.

99. Instead of conducting investigations, Woco destroyed evidence supporting Plaintiffs allegations and contradicting the allegations against them.

100. This destruction violated Plaintiffs rights under Title IX.

101. One of Defendant's investigators testified under oath that she believes she was unqualified to conduct the level of investigation required by the scenario presented to the school by the Plaintiffs.

102. No matter what level of investigation was conducted by Defendant, Defendant never provided either Doe or Roe the results of any investigations

103. These failures by the Defendant left the Plaintiffs vulnerable to further sexual harassment.

104. Plaintiffs in fact both suffered further sexual harassment which was described by former schoolmates in the fall of 2018 as having reached more than 500 students at Defendant Woco. This constitutes more than 25 percent of Defendant's total student population.

105. These same former schoolmates were unable to conceive of any way in which the Plaintiffs could be made whole for the damages caused by rumor spreading.

106. Defendant's deliberate indifference caused injuries to the Plaintiffs including but not limited to mental anguish, humiliation, embarrassment, loss of reputation, anxiety, physical hurt, loss of investment, loss of time, loss of money.

V. **LEGAL CLAIMS**

**FOR A FIRST CAUSE OF ACTION**
**Deliberate Indifference to Plaintiffs' Complaints**
**in Violation of 20 USC Section 1681.**

107. The above paragraphs are incorporated by reference into this cause of action as if restated verbatim.

108. Defendant Woco receives federal financial assistance and did so during the time relevant to this Complaint.

109. Plaintiffs sustained harassment because of their sex that was so severe, pervasive, and or objectively offensive that it deprived them of access to educational opportunities.

110. Plaintiffs complained to Defendant Woco and put them on notice of sexual harassment, unwanted contact, violation of no-contact agreements, and false

       allegations being suffered by Plaintiffs at the hands of other students and in situations over which Defendant had a responsibility to regulate.

111. Defendant Woco had actual knowledge of the complaints in March, 2015, May, 2015, March, 2016, May, 2016, June, 2016, July, 2016, August, 2016, September, 2016, October, 2016, Nov, 2016 and December, 2016.

112. The harassment of which Plaintiffs complained occurred in a context that was subject to Defendant Woco's control and where Defendant could have taken remedial action.

113. Defendant's response to the harassment and violations of the no-contact orders sustained by Plaintiffs and or its lack of response was deliberately indifferent and clearly unreasonable in light of the known circumstances.

**WHEREFORE,** the Plaintiffs request that this Court:

a. Accept jurisdiction over the action;

b. Empanel a jury to fairly hear and decide this action;

c. Award to the Plaintiffs compensatory damages resulting from their pain and suffering resulting from the Defendant's deliberate indifference;

d. Award to the Plaintiffs reasonable attorneys' fees and costs expended in litigating this matter; and

e. Award to the Plaintiffs such other relief as it deems just and proper.

**Respectfully Submitted by:**

/s/James A Brown, Jr.
James A. Brown, Jr.                              April 28, 2019
Federal ID# 7646                                 Beaufort, SC

Law Offices of Jim Brown, P.A.
1600 Burnside Street, Suite 100
P.O. Box 592
Beaufort, SC 29901-0592
(843) 470-0003

Attorney for the Plaintiffs